IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board, :
:
Petitioner :
:
v. : No. 520 C.D. 2019
: Submitted: December 12, 2019
Unemployment Compensation :
Board of Review, :
:
Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: February 5, 2020

The Pennsylvania Liquor Control Board (Employer) petitions for review of the April 2, 2019 order of the Unemployment Compensation Board of Review (Board) reversing a referee's determination and holding that Catherine Eib (Claimant) is not ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Discerning no error, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). This section provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

Claimant worked for Employer from January 29, 2007, to December 12, 2018, when Employer terminated her employment. Reproduced Record (R.R.) at 56a-57a. Claimant's final job title was general manager at Employer's Fine Wine and Good Spirits store number 5145 (Store 5145), earning $30.70 per hour. *Id.* After her discharge from employment, Claimant applied for UC benefits. The local service center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law because she was discharged for willful misconduct. Claimant appealed, and a referee held a hearing on January 29, 2019.

At the hearing, Ronald Kuhn (Kuhn), Employer's Administrative Assistant, testified that Employer has a policy prohibiting employees' acceptance of gratuities from licensees. R.R. at 63a. Specifically, the policy states, "Requesting or receiving gratuities, tips, gifts, or vendor merchandise or displays . . . may be just cause for immediate discharge." *Id.* at 70a.

Kuhn testified that Employer received an anonymous tip that Claimant was receiving gratuities from two particular licensees in violation of Employer's policy. R.R. at 58a. The anonymous tip indicated that gratuities were kept in an envelope under the computer tower. *Id.* at 70a. Employer began investigating and reviewed videotape footage of transactions involving the two licensees. *Id.* at 59a, 69a. The videotape footage showed that after Claimant conducted a transaction with a licensee, the licensee left money on the counter, and Claimant placed the gratuity in an envelope in her cash drawer. *Id.* at 59a, 61a. When asked by the referee what Claimant should have done with the unsolicited gratuity, Kuhn stated that Claimant should have included the money with the store's daily deposit. *Id.* at 82a.

Nicole Resto (Resto), Employer's District Manager, testified that after reviewing the video footage, she went to Store 5145 on September 25, 2018. R.R.

2

at 69a. While there, she looked under the computer tower and found a white envelope containing $238.00. *Id.* at 79a. Employer suspended Claimant on September 27, 2018, based on the investigation. *Id.* at 71a. Resto testified that Employer interviewed all of the employees at Store 5145. *Id.* The investigation resulted in two assistant managers and a part-time clerk also being suspended for accepting gratuities. *Id.* Resto confirmed that the two assistant managers and the part-time clerk were reinstated after unpaid suspensions but were moved to different stores. *Id.* at 72a-74a. Claimant, however, ultimately was discharged for accepting gratuities in violation of Employer's policy and for allowing subordinates to accept gratuities. *Id.* at 75a.

Claimant acknowledged that she had received and signed the policy prohibiting the acceptance of gratuities. R.R. at 63a. Claimant testified that two licensees gave gratuities despite knowing that Employer did not allow employees to accept them. *Id.* at 77a. She explained:

> [Claimant:] There's two licenses that give tips, that - - like I said, they come in. They aren't even my licensees. They come to my store because at the stores they're assigned to, they have problems with the managers and the clerks there and they said they've complained over and over again. So the [one] licensee, I've been doing his order since I was a part time clerk and that's the licensee in question. He will come in and he will place the money down and he will not take it. And I've said this to him. We cannot take it. He doesn't care. He leaves it there. The other licensee in question, I believe, gives it to the other guys and forces it into their apron, is what I've been told. But he doesn't give me - - he's never tried to give me anything.
>
> [Referee:] And then what did you do?
>
> [Claimant:] Then I put it into an envelope in the office.

3

* * *

> [Claimant's Lawyer:] [What] did you tell [the licensees] about whether you could accept any gratuities?
>
> [Claimant:] I told Kelly . . . over and over again, we are not allowed to accept tips. We are not allowed. He said I've been in the business for 50 years and I've always given tips and I always will.
>
> [Claimant's Lawyer:] Did you ever ask any of the licensees for tips?
>
> [Claimant:] Absolutely not.

R.R. at 77a-78a.

Claimant testified that the common practice since her arrival at Store 5145, and at the locations where she previously worked, was to use the unsolicited tip money for store supplies. *Id.* at 78a. Claimant said that when she was promoted to general manager of Store 5145, an envelope system for handling unsolicited gratuities was already in place, so she continued to follow that practice. *Id.* at 78a, 82a. Claimant further testified that when she returned Store 5145's keys to Resto during her suspension from employment, Resto told her that the practice of keeping gratuities was commonplace in Employer's stores. *Id.* at 79a. Resto denied such a conversation occurred. *Id.* at 77a, 83a.

The referee found that Employer had a rule prohibiting employees from receiving gratuities and that Claimant was aware of the rule. The referee found that Claimant had accepted gratuities from a licensee and had allowed subordinate employees to accept gratuities. The referee found that Claimant "believed that her actions were appropriate," (Referee's Finding of Fact No. 19), but concluded that Claimant's failure to ask Employer how to handle the unsolicited gratuities violated Employer's rule and fell below the standard of behavior that Employer has a right to

4

expect from its employees. The referee concluded that Claimant was ineligible for benefits under Section 402(e) of the Law. Claimant appealed to the Board.

The Board found:

2. [Employer] has a policy which states employees should exercise caution with regard to the acceptance of any gifts and should not ask for or receive, directly or indirectly, any commission, remuneration or gift or any other thing of value directly or indirectly from a licensee.

3. Based upon an anonymous tip, [Employer] investigated allegations employees at [Claimant's Store 5145] were accepting monetary tips.

4. On September 13, 2018, a licensee left five dollars on the counter after [Claimant] assisted him with his order.

5. [Claimant] previously informed the licensee that she could not accept tips but he insisted on leaving a tip each time.

6. [Claimant] placed the five dollars in an envelope stored in an office at [Store 5145].

7. The envelope containing the tip money existed prior to [Claimant] becoming the General Manager.

8. [Employer] has a procedure for handling tip money left at its stores. The procedure is to include the money with the other store money for deposit in the bank.

9. [Employer] visited [Store 5145] and found the envelope, which contained $238.

10. Further investigation revealed that two Assistant Managers and a clerk at [Store 5145] had also accepted monetary tips.

11. [Claimant] and three other employees were suspended. The three employees returned to work upon the conclusion

5

of the investigation. [Claimant] was the only employee that was terminated.

12. [Claimant] was terminated for violating [Employer's] gift policy.

Board's Findings of Fact (F.F.) Nos. 2-12.

The Board found that a "licensee forced a monetary tip after the [Claimant] repeatedly informed him she could not accept it." Board 4/2/19 Opinion at 2. The Board noted there was no evidence that Claimant's conduct was contemplated by Employer's policy. Moreover, the Board found that Kuhn's testimony regarding the procedure for dealing with gratuities demonstrated that Employer expected this exact situation to occur. Employer presented no evidence that Claimant knew Employer had a policy to include forced tip money in with the daily bank deposit. Therefore, the Board concluded that Employer failed to prove that Claimant's conduct was in violation of Employer's policy prohibiting employees from accepting gratuities.[2] The Board reversed the referee's decision and held that Claimant was not ineligible for benefits due to willful misconduct. Employer then petitioned this Court for review.

---

[2] The Board further opined that, even if Employer had met its burden of proving willful misconduct, Claimant showed that she was disparately treated by Employer. On appeal, Employer asserts that the Board capriciously disregarded relevant evidence showing that Claimant was not disparately treated; Claimant was a general manager, and the other employees who were disciplined less severely were her subordinates. The Board concedes that Claimant is not similarly situated to the other employees who received less severe discipline, which is a required element for the affirmative defense of disparate treatment. *Allen v. Unemployment Compensation Board of Review*, 189 A.3d 1128, 1134 n.4 (Pa. Cmwlth. 2018).

On appeal,[3] Employer argues that the Board capriciously disregarded competent and relevant evidence.[4] Employer asserts that it proved the existence of its rule prohibiting employees from receiving tips. Employer argues that Claimant admitted she was aware of the policy and knowingly violated it. Employer asserts that the record lacks evidence of any good cause for Claimant's violation of the rule, and that Claimant's deliberate violation of Employer's policy necessitates a finding of willful misconduct by Claimant.

The Board argues that Claimant's actions regarding the unsolicited tip money do not rise to the level of willful misconduct. The Board asserts that Claimant did not violate Employer's prohibition on employee's soliciting gifts, but rather was forced to take tip money she had informed the licensee she was unable to accept. The Board further asserts that even if Claimant violated Employer's policy, she had no "consciousness of wrongdoing," and therefore did not commit willful misconduct. Board's brief at 11.[5]

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

[4] Capricious disregard occurs when the fact-finder deliberately disregards relevant, competent evidence. *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). Our Supreme Court has held that review for capricious disregard of competent evidence is appropriate in every case in which such question is properly before the Court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

[5] The Board notes that when an allegation of misconduct is based on the violation of a rule, the employer must show the existence of a work rule and "also present evidence that the employee *deliberately* violated the rule." *Eschbach v. Unemployment Compensation Board of Review*, 855 A.2d 943, 947 (Pa. Cmwlth. 2004) (emphasis in original).

It is well-settled law that the Board is the ultimate fact-finder in unemployment compensation proceedings. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985). The Board is empowered to resolve all conflicts in evidence, assess witness credibility, and weigh the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). It is irrelevant whether the record contains evidence to support findings other than those made by the Board; the critical inquiry is whether there is evidence to support the findings actually rendered by the Board. *Id.* Where substantial evidence supports the Board's findings, they are binding on appeal. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

However, the Board is not free to ignore overwhelming evidence in favor of a contrary result. *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811, 815 (Pa. Cmwlth. 2008). The Board has a responsibility to resolve conflicts in testimony and explain why it has accepted, or rejected each piece of relevant evidence. *Id.*

Section 402(e) of the Law provides that a claimant is ineligible for UC benefits when her unemployment is due to willful misconduct. 43 P.S. §802(e). Willful misconduct is defined as:

> a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

8

*Moran v. Unemployment Compensation Board of Review*, 973 A.2d 1024, 1029 (Pa. Cmwlth. 2009). The question of whether certain conduct amounts to willful misconduct is a question of law subject to this Court's review. *Goodwill Industries v. Unemployment Compensation Board of Review*, 634 A.2d 738, 739 (Pa. Cmwlth. 1993). An employer asserting willful misconduct based on the violation of a work rule carries the initial burden of proving the existence of the rule, the reasonableness of the rule, the claimant's awareness of the rule, and the claimant's violation of the rule. *Moran*, 973 A.2d at 1029. Once the employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to show good cause for her violation of the work rule. *Oliver v. Unemployment Compensation Board of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010).

In this case, the Board found that Claimant's conduct of receiving an unsolicited gratuity from a licensee and placing the money in a fund used for store supplies was not contemplated by Employer's rule prohibiting employees from accepting gifts. F.F. No. 2. The Board determined that Employer failed to prove that Claimant's conduct violated the gift policy. Rather, the Board found that Kuhn's statement regarding the deposit of unwanted tips left by licensees demonstrated that Employer expected this exact situation to occur.

Employer's argument that the Board capriciously disregarded evidence of Claimant's willful misconduct is unpersuasive. The Board addressed all of the relevant record evidence in its decision. The Board explained why it rejected Employer's argument that Claimant's conduct violated the policy prohibiting gifts. Board 4/2/19 Opinion at 3 ("There is no evidence to show that [Claimant's] conduct was contemplated by the policy. In fact, [Employer's] witness testified that it has an established procedure for dealing with such monetary tips, showing there is an

9

expectation that monetary tips not accepted for personal use may occur."). The Board made all necessary findings and clearly articulated its reasoning. Therefore, the Board's conclusion that Claimant is not ineligible for benefits does not constitute a capricious disregard of the evidence. *See Wise*, 111 A.3d at 1262-63.[6]

The record supports the Board's findings and the Board's findings support the Board's conclusion that Claimant's actions did not amount to willful misconduct. Our review reveals that the Board did not capriciously disregard evidence in determining that Claimant is not ineligible for UC benefits under Section 402(e) of the Law.

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

---

[6] In its reply brief, Employer asserts that the Board erred in finding that Employer has a separate policy applicable to handling unsolicited tips. However, Employer failed to raise this issue in its petition for review and brief, and therefore it is waived. *See* Pa. R.A.P. 1513(d); *Maher v. Unemployment Compensation Board of Review*, 983 A.2d 1264, 1266 (Pa. Cmwlth. 2009). Even if the issue was not waived, the absence of a directive or guidance in Employer's policy for addressing an unsolicited tip further supports the Board's reasoning that these particular circumstances were not contemplated or covered by Employer's gratuity policy.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control Board, :
                                      :
                Petitioner   :
                                        :
                  v.           : No. 520 C.D. 2019
                                        :
Unemployment Compensation    :
Board of Review,                  :
                                        :
              Respondent : 

## O R D E R

AND NOW, this 5<u>th</u> day of <u>February</u>, 2020, the order of the Unemployment Compensation Board of Review dated April 2, 2019 is AFFIRMED.


                                   _____

                                     MICHAEL H. WOJCIK, Judge